[No. 48444-3-I. Division One. October 21, 2002.]

LINDA BLANEY, *Respondent*, v. INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 160, *Appellant.*

*John P. Mele* and *Michael R. Rayton* (of *Ryan, Swanson & Cleveland, P.L.L.C.*), for appellant.

*Stephen P. Connor* (of *Short Cressman & Burgess, P.L.L.C.*) and *Philip A. Talmadge* (of *Talmadge & Stockmeyer, P.L.L.C.*), for respondent.

Cox, A.C.J. — This gender discrimination case presents two issues: the propriety of a jury instruction on front pay and whether adverse tax consequences from the payment of an award under RCW 49.60.030(2) are compensable under the Washington Law Against Discrimination (WLAD).

The trial court erred by instructing the jury to award Linda Blaney front pay damages against The International Association of Machinists and Aerospace Workers, District No. 160 (the District) from the date of trial until her expected retirement. But that error was harmless. We also hold that adverse federal tax consequences from the payment of an award for violation of the WLAD are "actual damages" under RCW 49.60.030(2). We affirm in part, reverse in part, and remand.

Blaney has worked for Kenworth Trucking Company since 1978. She is a member of the District. The District is the official bargaining representative for 14 local unions, and represents several thousand unionized machinists in Washington and Alaska. Blaney served as a union shop steward and chief shop steward in the late 1980s. She became the vice-president of her local union in the early 1990s, and later served two terms as president.

In 1997, Blaney applied unsuccessfully to the District for a position as a business representative. She applied again

in 1998, 1999, and 2000, but the District still did not select her. In August 1999, the District removed her from her position as senior chief shop steward.

Shortly thereafter, Blaney commenced this gender discrimination action against the District. The case went to trial, and the jury returned a verdict in Blaney's favor. The jury found that the District had discriminated against her by not selecting her as a business representative in 1998, 1999, and 2000, and by removing her as senior chief shop steward. It awarded her damages, including back pay, front pay, and for emotional distress. The court entered a judgment on the verdict in the amount of $638,764. The court also entered a supplemental judgment in the amount of $235,625.38 for prejudgment interest, attorney and expert fees, and costs.

Blaney then moved unsuccessfully for a supplemental judgment to compensate her for the federal income tax obligations she will incur upon the District's payment of the judgments. We explain the specifics of the tax obligation later in this opinion.

The District appeals. Blaney cross-appeals the trial court's denial of a postverdict supplemental judgment to offset the adverse federal tax consequences of the award.

### Jury Instruction—Front Pay

The District argues that the trial court erred by instructing the jury to award Blaney front pay damages from the date of trial until the date she "may reasonably be expected to retire."[1] Specifically, the District maintains that the court's instruction prevented it from arguing that the jury should limit the duration of any front pay award because Blaney's tenure as a business representative might not have lasted until she retired. Because the likely duration of future employment wrongfully terminated by discrimina-

---

[1] The District withdrew its appeal of the trial court's refusal to give another instruction that the District proposed. Reply Br. of Appellant at 16. Accordingly, we do not address that issue.

tion is a question of fact for the jury, we agree that the instruction was incorrect.

This court reviews de novo claimed errors of law in jury instructions.[2] Jury instructions are sufficient if they allow each party to argue its theory of the case, do not mislead the jury, and, when read as a whole, properly inform the trier of fact of the applicable law.[3]

The court's instruction 10 stated:

> In calculating damages for future wage loss you should determine the present cash value of salary, pension, and other fringe benefits from today *until the time Ms. Blaney may reasonably be expected to retire*, decreased by any projected future earnings from another employer.[4]

As a preliminary matter, Blaney argues that the District failed to properly preserve its right to challenge this instruction on appeal. She maintains that the District failed to object to the instruction with sufficient particularity to satisfy the requirements of CR 51(f). The record shows otherwise.

Under CR 51(f), the party objecting to a jury instruction "shall state distinctly the matter to which [the party] objects and the grounds of [the] objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made." The purpose of this rule "is to assure that the trial court is sufficiently apprised of any alleged error in the instructions so that the court is afforded an opportunity to correct any mistakes before they are made and thus avoid the inefficiencies of a new trial."[5] This court's " 'inquiry on review is

---

[2] *Keller v. City of Spokane*, 104 Wn. App. 545, 551, 17 P.3d 661 (2001), *aff'd*, 146 Wn.2d 237, 44 P.3d 845 (2002).

[3] *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

[4] (Emphasis added.)

[5] *Goehle v. Fred Hutchinson Cancer Research Ctr.*, 100 Wn. App. 609, 615, 1 P.3d 579, *review denied*, 142 Wn.2d 1010 (2000).

whether the exception was sufficient to apprise the trial judge of the nature and substance of the objection.' "[6]

■ Here, the District's exception to instruction 10 was sufficient to apprise the trial court of the nature and substance of its objection. The District specifically excepted to the phrase "may reasonably be expected to retire" by arguing that it was "unsupported by the case law." Moreover, the District proposed an instruction that highlighted the error by indicating front pay would be awardable from the date of its verdict "for a reasonably certain period of time that does not exceed the likely duration of employment."[7] That proposed instruction bears a notation that it is a modification of 6A WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.82, at 258 (1997) (WPI) the very pattern instruction on which the instruction now under review is based. The cumulative effect of these actions was to alert the court to the point now argued on appeal.

Blaney also argues that the District failed to preserve its claim of error because it did not propose an appropriate alternate instruction. But as we explained above, the District proposed such an instruction, and the court rejected it.

■ Moving to the merits of the argument, the District relies on *Lords v. Northern Automotive Corp.*[8] It argues that the court erred by instructing the jury to award Blaney front pay until the time of her expected retirement because the number of years to be included in a front pay award is a question for the jury, not the court. We agree.

In *Lords*, an at-will employee commenced an action alleging various claims against his employer, including disability discrimination.[9] The trial court instructed the jury that, if it found discrimination, it could award front

---

[6] *Goehle*, 100 Wn. App. at 615 (quoting *Walker v. State*, 121 Wn.2d 214, 217, 848 P.2d 721 (1993)).

[7] Clerk's Papers at 194.

[8] 75 Wn. App. 589, 881 P.2d 256 (1994), *overruled on other grounds by Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 308, 898 P.2d 284 (1995).

[9] *Lords*, 75 Wn. App. at 594.

pay only for the five-year period following the employee's termination.[10]

This court held that the trial court had "erred in limiting front pay to 5 years after termination."[11] It noted that:

> there are three possible rules regarding front pay determinations: (1) allow the court to establish the parameters of front pay, then allow the jury to determine the amount as was done in this case; (2) allow the jury to determine the entire issue as occurs in nondiscrimination cases under Washington law; or (3) allow the court, in its discretion, to determine the entire issue of front pay as some federal circuit courts do.[12]

This court rejected the first option, reasoning that "[t]he likely duration of the terminated employment is an issue of fact, not law."[13] This court also rejected the third option as contrary to our prevailing case law.[14] We ultimately adopted the second approach, and concluded that, "[o]nce an employee produces evidence from which a reasonable future employment period may be projected, the amount of front pay, including the likely duration of employment, should go to the jury."[15] That approach is "most consistent with analogous case law and is most likely to achieve an equitable result."[16] This court specifically held that "[f]ront pay should be awarded 'for a reasonably certain period of time that does not exceed the likely duration of the terminated employment.' "[17] Because the trial court in that case had erred by establishing the parameters of the front pay

---

[10] *Lords*, 75 Wn. App. at 605 n.7.

[11] *Lords*, 75 Wn. App. at 607.

[12] *Lords*, 75 Wn. App. at 606.

[13] *Lords*, 75 Wn. App. at 607.

[14] *Lords*, 75 Wn. App. at 607 (citing *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992)).

[15] *Lords*, 75 Wn. App. at 607.

[16] *Lords*, 75 Wn. App. at 607.

[17] *Lords*, 75 Wn. App. at 605 (quoting *Hayes v. Trulock*, 51 Wn. App. 795, 802, 755 P.2d 830 (1988)).

award, this court reversed and remanded for a new trial on damages.[18]

In *Ford v. Trendwest Resorts, Inc.*,[19] our state Supreme Court recently declined to extend *Lords* to a case involving a lawsuit for breach of an employment at-will contract. The court instead held that lost earnings are not an appropriate measure of damages when an employer breaches a contract to hire an at-will employee.[20] But the court did not disapprove of *Lords* to the extent that it applies to a discharged employee's right in a discrimination case to recover front pay "for a reasonably certain period of time that does not exceed the likely duration of the terminated employment." Had the Supreme Court wished to modify the rule of *Lords*, it could have either done so or called into question the rule of that case. It did neither.

As in *Lords*, the trial court here established the term of front pay. Specifically, the trial court instructed the jury that, if it found discrimination, it should award front pay from trial "until the time [Blaney] may reasonably be expected to retire." This is not the same as properly instructing the jury to award front pay "for a reasonably certain period of time that does not exceed the likely duration of the terminated employment." The former sets a minimum term for a front pay award. The latter properly leaves the term to the jury to decide. The court's instruction 10 is incorrect.

Both Blaney and the trial court appear to have relied on WPI 330.82, which instruction 10 parallels. The problem is the choice of options within that pattern instruction, not the instruction itself. That pattern instruction provides alternative language in brackets based on the facts of the specific case.[21] The comments to this pattern instruction

---

[18] *Lords*, 75 Wn. App. at 607.

[19] 146 Wn.2d 146, 43 P.3d 1223 (2002).

[20] *Ford*, 146 Wn.2d at 157.

[21] WPI 330.82 (Damages—Employment Discrimination—Future Lost Earnings (Front Pay)) states: "In calculating damages for future wage loss you should

explain that the choice of language may depend on whether the type of alleged discrimination is based on age or some other trait. Thus, if the discrimination claim is based on age, unless an employer provides contrary evidence, a court may instruct that an employee would have continued working until the normal age of retirement. But in a sex discrimination case, such as this, the number of years of future lost earnings is left to the jury. Specifically, at page 259 of WPI 330.82, the comments state:

"Front pay should be awarded for a reasonably certain period of time that does not exceed the likely duration of the terminated employment." *Lords v. Northern Automotive Corp.*, 75 Wn. App. 589, 605, 881 P.2d 256, 264 (1994). In an *age* discrimination case, unless the employer provides evidence to the contrary, a jury may be told to consider that an illegally-discharged employee would have continued working for the employer until he or she reached normal age of retirement. See *Lords*, 75 Wn. App. at 605, 881 P.2d at 264. *In other cases, the determination of future lost earnings, including the number of years, is generally left to the jury to determine, once an employee produces evidence from which a reasonable future employment period may be projected.* See *id.* at 607, 881 P.2d at 266.[22]

Blaney argues that the jury could have found that she would retire at "the normal age of eligibility for retirement benefits," or earlier if "a new directing business representative dictated." She maintains that the instruction accordingly complied with the holding in *Lords* because it was still within the jury's discretion to determine how many years to include in its front pay award. This argument is unpersuasive.

First, the record does not support her argument that the jury retained any substantive discretion in arriving at its front pay award. Expert witness Lowell Bassett testified about Blaney's front pay damages. He calculated Blaney's

---

determine the present cash value of salary, pension, and other fringe benefits from today until the time plaintiff may reasonably be expected to [retire] [fully recover from the continuing effects of the discrimination], decreased by any projected future earnings [from another employer]."

[22] (Emphasis added.)

lost future wages based on the assumption that she would have worked as a business representative for the District from her age at the time of trial (50) until the estimated retirement age of 62.8. Based on that assumption, he calculated her front pay damages as $450,861. On cross-examination, Bassett testified that had Blaney worked as a business representative for only five years, her front pay damages would have been just $183,204.

Because the trial court expressly instructed the jury to award any front pay damages to the date of Blaney's reasonably expected retirement, the jury clearly followed that instruction. It awarded Blaney $450,861 in front pay damages—the precise amount to which Bassett testified based on the assumption that she would work until retirement. The $183,204 figure to which Bassett testified on cross-examination was irrelevant given the instruction.

Second, Blaney's argument that the jury could have found that she would have "retired" earlier if a new directing business representative had terminated her employment is strained. *Black's Law Dictionary* defines "retirement" as "[v]oluntary termination of one's own employment or career, esp. upon reaching a certain age."[23] Involuntary removal by the directing business representative is not the equivalent of "retirement," as defined in the dictionary.

Because the court instructed the jury to award front pay through the date of Blaney's expected retirement, the jury presumably followed that directive and did not consider any other alternative in awarding front pay.

For these reasons, the trial court's instruction was erroneous.

Blaney argues in the alternative that any instructional error was harmless because the District failed to present evidence that Blaney's employment would have terminated

---

[23] BLACK'S LAW DICTIONARY 1317 (7th ed. 1999); *but see Zachman v. Whirlpool Fin. Corp.*, 123 Wn.2d 667, 672-73, 869 P.2d 1078 (1994) (stating a superior court judge who was defeated in a reelection bid was "retire[d]" for purposes of a state constitutional provision regarding judges pro tempore).

short of retirement. We agree that the instructional error was harmless, on this record.

■ ■ An instruction that erroneously states the applicable law is reversible error if it prejudices a party.[24] An erroneous instruction is prejudicial if it affects the outcome of the trial.[25]

■ The question here is one of prejudice to the District, given the erroneous instruction and the evidence presented to the jury at trial. Blaney presented evidence through her expert, Lowell Bassett, that she was statistically likely to work until age 62.8. During cross-examination, the District suggested that Blaney might not work until that age, provided she was discharged in the future.

The District contends on appeal that there was evidence that Blaney would have been discharged. We find no such evidence in the record.

The District points first to the testimony of Don Hunsey and Richard Brown regarding concerns about Brown's lack of loyalty, which led to Brown's resignation. Assuming there is a rational connection between Brown's lack of loyalty and Blaney's alleged lack of the same attribute, whether Blaney would have either resigned or been terminated before retirement is purely speculative. There is no evidence of any steps being taken to terminate her employment for this reason.

Likewise, the District claims that Blaney frequently "bad mouthed" Hunsey and others. It also claims she interfered in the work of business representatives. Finally, the District points to evidence that Blaney failed in the past to support District positions on collective bargaining negotiations and on relations with management. But nothing, other than speculation, supports the conclusion that Blaney

---

[24] *McDonald v. Dep't of Labor & Indus.*, 104 Wn. App. 617, 17 P.3d 1195 (2001); *Hue*, 127 Wn.2d at 92.

[25] *Stiley v. Block*, 130 Wn.2d 486, 499, 925 P.2d 194 (1996).

would have been terminated by the District Council,[26] the only entity with authority to approve her termination, for any of these reasons earlier than the age projected by her expert.[27]

Had there been evidence to support a nonspeculative determination that she would have been terminated, we might view the record differently. But on this record, we see no prejudice by the giving of the erroneous instruction. The error was harmless.

Because of our resolution, we need not address whether Blaney's reliance on *Phanna K. Xieng v. Peoples National Bank of Washington*[28] and *Sheehan v. Donlen Corp.*[29] is appropriate in this case.

## Supplemental Judgment

Blaney argues that the trial court erred by denying her request following the jury verdict for a supplemental judgment to offset the adverse federal tax consequences to her from the District's lump-sum payment of the judgments on the damages award and attorney fees against it. Specifically, Blaney maintains that such a supplemental judgment is required as a matter of policy by the WLAD to make her whole, as a victim of unlawful discrimination. We hold that

---

[26] Mr. Hunsey testified as follows:

Q: Can business reps be terminated by you without any adjudication as to cause?

A: Yes, they can. Uh, they're at-will employees. Uh, they are actually, in our bylaws, appointed by the directing business representative upon approval of the District Council. Everything, sooner or later, has to go to the District Council.

Report of Proceedings at 1543.

[27] During final argument, the District argued that Blaney's employment was at-will, that she had been accused of significant misconduct, and that—absent any discrimination—she might not have been able to continue to be employed. Report of Proceedings at 1831-32. But final argument is not evidence, and we see nothing in the evidence to substantiate that she would have left employment earlier than the statistical projection of 62.8 years by her expert.

[28] 120 Wn.2d 512, 532, 844 P.2d 389 (1993).

[29] 173 F.3d 1039, 1047-48 (7th Cir. 1999).

such amounts are within the scope of the term "actual damages" under RCW 49.60.030(2). Accordingly, we remand for further proceedings that are consistent with this opinion.

Blaney argues that the District's payment of the judgments for substantial monetary damages and attorney fees based on its violation of the WLAD creates significant adverse federal tax consequences to her.[30] In this case, a certified public accountant who provided expert testimony below established that recent amendments to the Internal Revenue Code will result in Blaney incurring $244,753 in tax obligations that she would not have incurred but for the awards.[31] Payment of the judgments triggers adverse tax consequences to Blaney. First, she will face a higher average tax rate because the additional lump-sum income is not excludable from gross income and will be counted at the highest marginal rates. Second, she will be subject to alternative minimum tax because of the effects of the Internal Revenue Code on the payment of the attorney fees awarded to her.[32]

The District does not dispute either the legal effect of the Internal Revenue Code on Blaney's tax situation or

---

[30] This problem is not unique. Recently, a Chicago police officer won a sex discrimination and harassment lawsuit against her employer. But she faces a tax bill exceeding her award. The damages award was $300,000 and attorney fees and costs totaled almost $1,000,000. According to her lawyer, "She loses every penny of the award plus she will end up owing the Internal Revenue Service $99,000." Adam Liptak, *Tax Bill Exceeds Award To Officer in Sex Bias Suit*, N.Y. Times, Aug. 11, 2002, at A12.

[31] Clerk's Papers at 2091-2110. The jury previously found that the District unlawfully discriminated against Blaney, violating the WLAD, and awarded her back pay, front pay, and other relief. Based on that verdict, the court entered a judgment in the amount of $638,764 in her favor. Pursuant to statute, the trial court entered a supplemental judgment for attorney fees and costs in the amount of $235,625.38 in her favor. The total of these amounts is considered gross income to Blaney.

[32] *See generally* Laura Sager & Stephen Cohen, *How the Income Tax Undermines Civil Rights Law*, 73 S. Cal. L. Rev. 1075 (2000).

the amounts involved.[33] And it correctly states that whether tax consequences are damages is a matter of state, not federal, law.[34] The substance of the District's argument is that adverse tax consequences to a successful plaintiff under the WLAD are not "actual damages" under that act.

Whether adverse tax consequences to a successful plaintiff in a discrimination action constitute "actual damages" under RCW 49.60.030(2) has not been decided in Washington.[35] We examine the statute to decide the question.

RCW 49.60.030(2) states in pertinent part:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or *to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended* . . . .[36]

In *Martini v. Boeing Co.*,[37] our state Supreme Court recently addressed the scope of that term. In that case, an aircraft training instructor who suffered from sleep apnea commenced an action against his former employer for disability discrimination. At issue was whether a plaintiff with a successful disability discrimination claim under the WLAD must "[p]rove a [s]eparate [c]laim of [c]onstructive

[33] On appeal, the District does not dispute its ability to pay the judgments. Below, it suggested otherwise. Nothing in this record suggests that the District will not pay the judgments.

[34] *Pruett v. Erickson Air-Crane Co.*, 183 F.R.D. 248, 252 (D. Or. 1998).

[35] Although no Washington case has expressly addressed the issue, courts in other jurisdictions have granted this type of relief in related contexts. In *Sears v. Atchison, Topeka & Santa Fe Railway*, 749 F.2d 1451, 1456 (10th Cir. 1984), a Title VII class action, the court held "that the district court did not abuse its discretion when it included a tax component in the back pay award to compensate class members for their additional tax liability as a result of receiving over seventeen years of back pay in one lump sum." Likewise, in *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443 (E.D. Pa. 2000), a federal district court supplemented the jury's verdict in an Age Discrimination in Employment Act case to compensate for the negative tax consequences of the plaintiff's lump-sum award.

[36] (Emphasis added.)

[37] 137 Wn.2d 357, 971 P.2d 45 (1999).

[d]ischarge in [o]rder to [o]btain [d]amages for [f]ront and [b]ack [p]ay."[38] Looking to the plain language of the statute, the Supreme Court held that the WLAD "does not require that a discharge violating RCW 49.60.180(2) must occur as a condition precedent to a claim for damages under RCW 49.60.030(2)."[39]

The court determined that the term "actual damages" under RCW 49.60.030(2) includes front and back pay. In doing so, the court stated that "actual damages" is a:

"[t]erm used to denote the type of damage award as well as the nature of injury for which recovery is allowed; thus, *actual damages flowing from injury in fact are to be distinguished from damages which are nominal, exemplary or punitive. 'Actual damages' are synonymous with compensatory damages.*"[40]

The court also stated that RCW 49.60.030(2) thus "provides a person who has been discriminated against in violation of RCW 49.60.180(3) with a remedy *for full compensatory damages, excluding only nominal, exemplary or punitive damages.*"[41]

 Whether adverse tax consequences arising from Blaney's successful sex discrimination claim constitute "actual damages" under the WLAD is a question of legislative intent. In *Kilian v. Atkinson*,[42] our state Supreme Court recently again articulated the principles applicable to construing the WLAD. The court noted that in interpreting a statute courts must ascertain and give effect to the intent and purpose of the legislature in creating it.[43] "If a statute is clear on its face, its meaning is to be derived from the

---

[38] *Martini*, 137 Wn.2d at 363.

[39] *Martini*, 137 Wn.2d at 367.

[40] *Martini*, 137 Wn.2d at 367 (quoting BLACK's LAW DICTIONARY 35 (6th ed. 1990) (emphasis added) (citations omitted)).

[41] *Martini*, 137 Wn.2d at 368 (emphasis added).

[42] 147 Wn.2d 16, 50 P.3d 638 (2002).

[43] *Kilian*, 147 Wn.2d at 20.

language of the statute alone."[44] "[A]n unambiguous statute is not subject to judicial construction."[45] "A statute is ambiguous if it can be reasonably interpreted in more than one way, but it is not ambiguous simply because different interpretations are conceivable."[46] If a statute is ambiguous, courts resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it.[47]

When a statute is ambiguous, courts must construe it in order to effectuate the intent of the legislature.[48] "In construing a statute, courts should read it in its entirety, instead of reading only a single sentence or a single phrase."[49] "The court must also avoid constructions that yield unlikely, absurd or strained consequences."[50] "Courts may not read into a statute matters that are not in it and may not create legislation under the guise of interpreting a statute."[51]

The term "actual damages" is undefined in the WLAD. The dictionary definition provides some help in understanding its meaning. *Black's* defines "actual damages" as: "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses. Also termed compensatory damages." Compensatory damages are defined, in part, as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered."[52] But

---

[44] *Kilian*, 147 Wn.2d at 20.

[45] *Kilian*, 147 Wn.2d at 20.

[46] *Kilian*, 147 Wn.2d at 20-21.

[47] *Kilian*, 147 Wn.2d at 21.

[48] *Kilian*, 147 Wn.2d at 21.

[49] *Kilian*, 147 Wn.2d at 21.

[50] *Kilian*, 147 Wn.2d at 21.

[51] *Kilian*, 147 Wn.2d at 21.

[52] BLACK'S LAW DICTIONARY 394 (7th ed. 1999).

the term is ambiguous to the extent that this broad statement of a right does not fully define the scope of the right.[53]

■ As *Martini* notes, the term is very broad. That view is consistent with the general principle of making whole those who suffer from unlawful discrimination.[54] That broad view of the term is subject to two limitations: that the damages flow from the injury of unlawful discrimination, and they may not be "nominal, exemplary or punitive." For example, although the statute does not specify that back pay, front pay, mental anguish, and emotional distress are within the scope of the term "actual damages," case authority makes clear that each is compensable under the WLAD.[55] Thus, the absence of a specific reference to tax consequences in the statute is not determinative.

The District does not argue that adverse federal income tax consequences are properly characterized as "nominal, exemplary or punitive." Even if it had done so, such an argument would have no merit. Thus, the narrow question is whether the legislature intended that adverse tax consequences arising from violation of the WLAD fall within the scope of "full compensatory damages" that *Martini* indicates are compensable under that act.

We note the legislative statement of purpose of the WLAD:

> It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people

---

[53] *Cf. Marquis v. City of Spokane*, 130 Wn.2d 97, 107, 922 P.2d 43 (1996) (stating that ambiguity exists in RCW 49.60.030(1) to the extent that the scope of the rights in a nonexclusive list in the WLAD is undefined).

[54] *See Hayes*, 51 Wn. App. at 800-01 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-21, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975) (stating that the purpose of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination, and the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination)).

[55] *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 56-57, 573 P.2d 389 (1978) (holding that mental anguish and emotional distress are "actual damages").

of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of ... sex, ... are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.[56]

 And, as we previously noted in this opinion, courts have held that the general purpose of the WLAD is to "deter and eradicate discrimination."[57] The courts have also stressed that the WLAD embodies a public policy of the "highest priority."[58]

 The broad scope of the term "actual damages," the analysis of that term in *Martini*, the above legislative statements of policy to "deter and eradicate discrimination" and to make that objective a matter of public policy of the "highest priority," the policy of construing the WLAD liberally to effectuate its purpose, and the grant of this type of relief in federal cases construing similar discrimination laws[59] all support the conclusion that adverse federal income tax consequences triggered by payment of a judgment for violation of the WLAD are within the scope of the term "actual damages." We so hold. We have heard no convincing argument that our conclusion is inconsistent with the legislative intent of RCW 49.60.030(2).

This reading of the statute also makes practical sense. Focusing on the victims of unlawful discrimination, to allow either the elimination or a substantial reduction of compensatory damages to such victims because of federal income tax undercuts what this state has identified as "a public policy of the highest priority." Specifically, it threatens to thwart meritorious suits because a highly successful plain-

---

[56] RCW 49.60.010; *see Kilian*, 147 Wn.2d at 37 n.33 (Chambers, J., dissenting).

[57] *Marquis*, 130 Wn.2d at 109 (citations omitted).

[58] *Marquis*, 130 Wn.2d at 104.

[59] *See Sears*, supra n.35.

tiff runs the risk of having the entire benefit of a judgment eliminated plus incurring a substantial tax liability to the Internal Revenue Service. Even under the facts of this case, the net effect to Blaney is that she will not receive the full benefit of her award. The Internal Revenue Service will. To that extent, she will not be made whole, as *Martini* and other case authority state is the purpose of compensation under the WLAD.

The District argues that *Janson v. North Valley Hospital*[60] implicitly mandates that tax consequences are not proper damages. We disagree.

There, Julie Janson sued North Valley Hospital under the WLAD for sexual harassment and retaliatory discharge. The trial court gave an instruction to the jury, which the hospital challenged on appeal. The instruction stated that the award would be subject to federal income taxes.[61] The jury found in Janson's favor, and rendered a verdict approaching $60,000. On appeal, the question was whether the trial court erred in giving this instruction. Another division of this court held that injecting such information into jury deliberations would "make the issue of damage awards more complicated by injecting income tax consequences."[62] The court reversed for a new trial on damages.

*Janson* did not decide the question now before us. Whether or not one accepts the view that injecting the issue of taxes into jury deliberations is too complicated for the jury,[63] that is not the question here. Rather, the question is whether adverse federal tax consequences arising from unlawful discrimination under the WLAD are compensable

---

[60] 93 Wn. App. 892, 971 P.2d 67 (1999).

[61] *Janson*, 93 Wn. App. at 904-05.

[62] *Janson*, 93 Wn. App. at 906.

[63] The experience of one noted jurist, both as trial lawyer and judge, is to the contrary. The jurist observed that juries will generally reach just verdicts, even when scientific or technical information is involved. William L. Dwyer, In the Hands of the People—The Trial Jury's Origins, Triumphs, Troubles, and Future in American Democracy 134-36 (1st ed. 2002).

as "actual damages."[64] We have answered this legal question in the affirmative.

The District also makes a form of proximate cause argument. It argues that the tax consequences to Blaney do not flow from its discrimination but rather from the Internal Revenue Code. We are not persuaded by this view.

Specifically, the District argues that the taxes incurred due to the award are not "consequential damages" but are only consequences of income temporarily lost as a result of discrimination such as credit card interest, a mortgage foreclosure, or a lost business opportunity. The simple answer to this argument is that the broad sweep of the term "actual damages" does not make such distinctions. So long as the damages flow from the discrimination and are neither nominal, exemplary nor punitive, they are compensable.[65]

We express no opinion whether adverse tax consequences arising from damages and/or attorney fees in cases other than those under the WLAD may serve as a basis for damages. Those questions are not before us, and we do not decide them. Our decision today is based on the specific factors previously discussed in this opinion with respect to determining the legislative intent of RCW 49.60.030(2).

One final question remains. On remand, the parties shall present to the judge for decision the question of the extent to which damages for adverse tax consequences shall be awarded in this case.[66] The burden of proof shall be on Blaney, the proponent for the award of such damages. Expert opinion regarding the income tax consequences shall be required. Whether and to what extent damages for adverse federal income tax consequences shall be awarded shall be determined by the judge.

---

[64] Likewise, *Hinzman v. Palmanteer*, 81 Wn.2d 327, 501 P.2d 1228 (1972), is of limited use. The WLAD was not at issue in that case.

[65] *Martini*, 137 Wn.2d at 367.

[66] The District does not argue that the jury should decide this question.

For the above reasons, we reverse the denial of the request for a supplemental judgment for adverse tax consequences, and remand for the submission of the question to the judge.

Attorney Fees on Appeal

Blaney requests attorney fees on appeal under RCW 49.60.030(2) and RAP 18.1. She is entitled to such fees.

We affirm the judgment, but reverse the order denying Blaney's request for a supplemental judgment. We remand to the trial court to determine damages for the adverse federal income tax consequences to Blaney. The trial court shall also determine, pursuant to RAP 18.1, the amount of attorney fees and costs on appeal to be awarded to Blaney.

AGID and SCHINDLER, JJ., concur.

Review granted at 149 Wn.2d 1010 (2003).