87 P.3d 757 (2004)
151 Wash.2d 203
Linda BLANEY, Respondent,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 160, Petitioner.
No. 73306-6.
Supreme Court of Washington, En Banc.
Argued September 18, 2003.
Decided April 1, 2004.
*758 John Peter Mele, Seattle, for Petitioner.
Philip Albert Talmadge, Talmadge & Stockmeyer, Tukwila, Stephen Patrick Connor, Stephen P. Connor PLLC, Seattle, for Respondent.
*759 Christopher S. Marks, Williams Kastner & Gibbs PLLC, Seattle, Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, for Amicus Curiae (Washington Defense Trial Lawyers).
Jeffrey Lowell Needle, Michael Craig Subit, Frank Freed Subit & Thomas LLP, Seattle, for Amicus Curiae (Washington Employment Lawyers Association).
Debra Leigh Williams Stephens, Bryan Patrick Harnetiaux, Spokane, for Amicus Curiae Washington State Trial Lawyers Assoc. Foundation.
FAIRHURST, J.
Three questions are presented in this gender discrimination case brought pursuant to Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW. Did the Court of Appeals properly find that the trial court's jury instruction on front pay constituted harmless error? Did the Court of Appeals properly find that WLAD entitles Linda Blaney to an offset for the additional federal income tax consequences from her damage awards? And is Ms. Blaney entitled to attorney fees on appeal?
We affirm the Court of Appeals' holding that the front pay jury instruction, although erroneous, constituted harmless error. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 114 Wash.App. 80, 92, 55 P.3d 1208 (2002). We affirm the Court of Appeals' determination that WLAD entitles Ms. Blaney to an offset for the additional federal income tax consequences, id. at 100, 55 P.3d 1208, but we reject the Court of Appeals' characterization of the offset as actual damages, and instead characterize it as "any other appropriate remedy authorized by... the United States Civil Rights Act of 1964 as amended." RCW 49.60.030(2). Finally, we award Ms. Blaney attorney fees on appeal. RCW 49.60.030(2); RAP 18.1(a).

I. FACTS
Ms. Blaney has been an employee of Kenworth Trucking Company since 1978. Throughout her tenure, Ms. Blaney has been very active with her union.[1] She is also a member of the International Association of Machinists and Aerospace Workers, District No. 160 (hereinafter District), the official bargaining representative for 14 affiliated local unions that represent approximately 8,000 unionized machinists at 300 businesses in Washington and Alaska.
Ms. Blaney filed this lawsuit alleging violations of WLAD because the District selected less qualified male business representative candidates in 1997, 1998, 1999, and 2000, and because in 1999 the District removed her as senior shop steward.
At trial, Ms. Blaney testified that she intended to work until age 65. 3 Verbatim Report of Videotape Recorded Proceedings (VRP) at 398. Ms. Blaney's expert, Lowell Bassett, Ph.D., testified that the average retirement age is 62.8. 6 VRP at 965. The District provided no direct testimony. In its cross-examination of Dr. Bassett, the District suggested that Ms. Blaney could be discharged prior to retirement. At the close of trial, the judge instructed the jury, "[i]n calculating damages for future wage loss you should determine the present cash value of salary, pension, and other fringe benefits from today until the time Ms. Blaney may reasonably be expected to retire, decreased by any projected future earnings from another employer." Clerk's Papers (CP) at 240. The District objected to the jury instruction, alleging that the language "may reasonably be expected to retire" was not supported by case law. The court denied the District's objection.
The jury found that the District discriminated against Ms. Blaney when it selected less qualified male business representatives in 1998, 1999, and 2000, and removed her as senior shop steward. Ms. Blaney was awarded back pay, front pay, and compensation for emotional distress. The judgment totaled $638,764 ($112,903 for past lost wages and benefits, $450,861 for future lost wages and benefits (based on the average retirement age of 62.8), and $75,000 for pain, suffering, *760 and emotional distress). Ms. Blaney sought and received a supplemental judgment of $237,625.38, for prejudgment interest, attorney fees, litigation expenses, costs, and expert witness fees and costs. Ms. Blaney unsuccessfully sought a supplemental judgment to offset the additional federal income tax consequences she will incur because she was not given the business representative position. She is not seeking a judgment to offset all the taxes she will incur from the $638,764 damage award. 2 VRP at 291-92. She is only seeking a judgment for the $244,753 in additional taxes she must pay above and beyond those she would have had to pay if the District had properly hired her as a business representative.[2] She also is not asking for a jury instruction on the federal income tax consequences, but rather for the judge to award them after the jury determines damages.
The District appealed, arguing the jury instruction on front pay constituted prejudicial error. Although the Court of Appeals found the jury instruction erroneous because it denied the jury the discretion to determine the duration of Ms. Blaney's future employment, it found the error was harmless because the District only offered speculative evidence to show that Ms. Blaney would have been terminated prior to retirement. Blaney, 114 Wash.App. at 84-85, 55 P.3d 1208.
Ms. Blaney cross appealed the trial court's denial of her motion for a supplemental judgment to offset the additional federal income tax consequences, arguing that WLAD entitled her to the offset. The Court of Appeals characterized the offset as actual damages under WLAD, and remanded to the trial court for a calculation of the offset and determination of the amount of attorney fees and costs on appeal to be awarded to Ms. Blaney. Id. at 101, 55 P.3d 1208.
We granted the District's petition for review of whether the front pay jury instruction constituted harmless error and whether WLAD entitles Ms. Blaney to an offset for the additional federal income tax consequences. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 149 Wash.2d 1010, 69 P.3d 875 (2003). We also consider Ms. Blaney's request for attorney fees on appeal pursuant to RCW 49.60.030(2).

II. ANALYSIS
A. The Jury Instruction on Front Pay was Erroneous but Harmless.
The District maintains that the jury instruction on front pay constituted prejudicial error,[3] while Ms. Blaney asserts that there was no error or the error was harmless. Alleged errors of law in jury instructions are reviewed de novo. Keller v. City of Spokane, 104 Wash.App. 545, 551, 17 P.3d 661 (2001), aff'd, 146 Wash.2d 237, 44 P.3d 845 (2002). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995).
Lords v. Northern Automotive Corp. properly held that "[f]ront pay should be awarded `for a reasonably certain period of time that does not exceed the likely duration of the terminated employment.'" 75 Wash.App. 589, 605, 881 P.2d 256 (1994). The length of an employee's future employment is a question of fact for the jury, and the duration of future employment may not necessarily extend *761 until retirement. Id. at 607, 881 P.2d 256.
The trial court's instruction to the jury to calculate future earnings "from today until the time Ms. Blaney may reasonably be expected to retire," CP at 240, was improper because it denied the jury the discretion to determine the duration of Ms. Blaney's future employmenta duration that may not necessarily extend to retirement. Lords, 75 Wash.App. at 605, 881 P.2d 256.
Having determined that the front pay jury instruction was erroneous, we next address whether it was harmless. An erroneous jury instruction is harmless if it is "not prejudicial to the substantial rights of the part[ies] ..., and in no way affected the final outcome of the case." State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341 (1947). A prejudicial error, on the other hand, affects or presumptively affects the results of a case, and is prejudicial to a substantial right. Id. When considering erroneous instructions, this court presumes prejudice, subject to a comprehensive examination of the record:
When the record discloses an error in an instruction given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless. However, it becomes our duty, whenever such a question is raised, to scrutinize the entire record in each particular case, and determine whether or not the error was harmless or prejudicial.

Id. at 341, 178 P.2d 341 (citation omitted; emphasis added).
Scrutiny of the Blaney record reveals that the erroneous front pay jury instruction was harmless because the District suffered no prejudice. See id. Ms. Blaney presented evidence to prove that she would work until retirement. She testified that she would work until age 65. 3 VRP at 398. Dr. Bassett testified that the average retirement age is 62.8. 6 VRP at 965. While Ms. Blaney provided nonspeculative evidence, the District provided none. Instead, during its cross-examination of Dr. Bassett, the District suggested that involuntary removal would preclude Ms. Blaney from working until retirement. For support, the District provided evidence surrounding the "at-will" nature of the business representative position.[4]
However, the District's arguments are unpersuasive for two reasons. First, the removal of a business representative is not entirely at the will of the directing business representative (hereinafter DBR); it requires the approval of the district lodge and the grand lodge. Second, the District has never removed a business representative.[5] 9 VRP at 1580. The District's cross-examination merely speculated that if Ms. Blaney were given the business representative position and if she performed in a way her DBR disapproved, then her DBR might suggest her termination, which the district lodge and grand lodge might approve, and if they did it would be the first termination of a business representative in the history of the District.
Accordingly, we agree with the Court of Appeals' holding that "[h]ad there been evidence to support a nonspeculative determination that [Ms. Blaney] would have been terminated [prior to retirement], we might view the record differently. But on this record, we see no prejudice by the giving of the erroneous instruction. The error was harmless." Blaney, 114 Wash.App. at 92, 55 P.3d 1208.
B. WLAD Entitles Ms. Blaney to an Offset for the Additional Federal Income Tax Consequences.
This issue of whether WLAD entitles plaintiffs who prevail in discrimination lawsuits *762 to an offset for the additional federal income tax consequences is one of first impression in Washington. Blaney, 114 Wash. App. at 94, 55 P.3d 1208. As a question of statutory interpretation, it is reviewed de novo. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001).
WLAD provides for the following remedies:
Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).
RCW 49.60.030(2).
This court generally reviews only those issues raised by the parties in their petition and answer. RAP 13.7(b). This rule is subject to numerous exceptions. Maynard Inv. Co. v. McCann, 77 Wash.2d 616, 621, 465 P.2d 657 (1970). One such exception provides that "[t]his court has the inherent discretionary authority to reach issues not briefed by the parties if those issues are necessary for decision." City of Seattle v. McCready, 123 Wash.2d 260, 269, 868 P.2d 134 (1994).
Although the parties' petition and answer did not explicitly brief characterization of Ms. Blaney's requested offset as "any other appropriate remedy,"[6] we may reach this remedial provision under RAP 13.7(b) because the parties expansively defined the WLAD issue as to whether WLAD entitles Ms. Blaney to the offset.[7] Moreover, we may reach the remedial provision under the common law exception because the provision is necessary to determine whether WLAD entitles prevailing plaintiffs to such an offset.
1. An offset for additional federal income tax consequences is properly characterized under WLAD's provision for "any other appropriate remedy."
The legislature added the "any other appropriate remedy" clause to the WLAD in 1993. Dailey v. N. Coast Life Ins. Co., 129 Wash.2d 572, 575, 919 P.2d 589 (1996). Three years later, this court acknowledged the ambiguity surrounding the new provision in dicta stating:
[T]he structure of the language in RCW 49.60.030(2) arguably evinces an intent to incorporate only federal remedies qualifying as "costs." While the trial court read the provision as: "to recover the actual damages ... together with ... any other remedy ...," we might reasonably read the term "including" as restrictive: "the cost of suit including ... any other remedy...."
Id. at 576, 919 P.2d 589.
We now resolve any ambiguity by holding that the "any other appropriate remedy" clause stands on its own as a third WLAD remedy. The structure of RCW 49.60.030(2) supports this reading of the statute; "any other' appropriate remedy" relates to "together with," logically providing a catchall remedy provision in addition to injunctive relief, actual damages, and cost of suit. Moreover, this reading coincides with the liberal construction WLAD requires,[8] *763 RCW 49.60.020, in order to effectuate its purposes of deterrence and eradication of discrimination. Marquis v. City of Spokane, 130 Wash.2d 97, 109, 922 P.2d 43 (1996).
Having determined that the "any other appropriate remedy" clause stands as a third WLAD remedy, we next assess whether this remedy entitles prevailing plaintiffs to an offset for the additional federal income tax consequences. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, addresses employment discrimination. Title VII's enforcement provision provides:
If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C.2000e-5(g)(1) (emphasis added). The United States Supreme Court has held that the goals of Title VII are to eradicate discrimination and "make persons whole for injuries suffered on account of unlawful employment discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). A number of federal courts have used the equitable powers bestowed on them by Title VII to allow offsets for the federal tax consequences of damage awards. See Sears v. Atchison, Topeka & Santa Fe Ry. Co., 749 F.2d 1451, 1456 (10th Cir.1984) (upholding a trial court's inclusion of tax consequences as part of a back pay award); EEOC v. Joe's Stone Crab, Inc., 15 F.Supp.2d 1364, 1380 (S.D.Fla.1998) (acknowledging the propriety of a district court ordered tax offset and noting that such offsets are "a prevailing practice in the settlement of Title VII suits," but refusing to grant an offset because the plaintiff failed to submit the evidence necessary to calculate the offset amount).
Because WLAD incorporates remedies authorized by the federal civil rights act and that statute has been interpreted to provide the equitable remedy of offsetting additional federal income tax consequences of damage awards, we hold that WLAD allows offsets for additional federal income tax consequences.
2. An offset for the increased federal income tax consequences is not properly characterized under WLAD's provision for actual damages.
Actual damages are "a remedy for full compensatory damages, excluding only nominal, exemplary or punitive damages," Martini v. Boeing Co., 137 Wash.2d 357, 368, 971 P.2d 45 (1999), that are "proximately caused by the wrongful action, resulting directly from the violation of RCW 49.60." 137 Wash.2d at 371, 971 P.2d 45. Proximate cause is a "cause which in a natural and continuous sequence, unbroken by a new, independent cause, produces the event, and without which that event would not have occurred." Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 935, 653 P.2d 280 (1982). In applying these definitions, this court characterized back and front pay proximately caused by unlawful discrimination as actual damages, Martini, 137 Wash.2d at 364, 971 P.2d 45, but refused to characterize punitive damages as actual damages. Dailey, 129 Wash.2d at 575, 919 P.2d 589.
Consistent with Martini, we refuse to characterize Ms. Blaney's requested offset *764 for additional federal income tax consequences as actual damages because the proximate cause of the additional tax consequences is not the unlawful discrimination, but rather the additional tax liability is a direct result of the tax laws. Thus, the additional tax liability is too attenuated from the unlawful discrimination to be deemed actual damages.
3. An offset for the additional federal income tax consequences is not properly characterized under WLAD's provision for cost of suit.
This court defined cost of suit as incurred costs that are "reasonable and necessary in the preparation and trial of the case," including statutory costs and litigation expenses such as transportation costs, copying costs, supplies, equipment and lodging. Blair v. Wash. State Univ., 108 Wash.2d 558, 573-74, 740 P.2d 1379 (1987). Consistent with Blair, we refuse to characterize Ms. Blaney's requested offset as a cost of suit because tax liability is incurred after, not during, litigation.
C. Ms. Blaney is Entitled to Attorney Fees on Appeal.
A plaintiff who prevails on a gender discrimination suit is entitled to reasonable attorney fees at the trial court, RCW 49.60.030(2), and on appeal. RAP 18.1(a); Martini, 137 Wash.2d at 377, 971 P.2d 45. Ms. Blaney is entitled to attorney fees on appeal because she properly requested such fees in her supplemental brief, and she prevailed on the WLAD issue.

III. CONCLUSION
We affirm the Court of Appeals' determination that the jury instruction on front pay constituted harmless error. The jury instruction was erroneous because it denied the jury the discretion to determine the duration of Ms. Blaney's future employment, a duration that may be shorter than retirement. However, the front pay jury instruction was harmless because the District provided only speculative evidence showing that Ms. Blaney would have been terminated prior to retirement.
We affirm the Court of Appeals' decision that WLAD entitles Ms. Blaney to an offset for the additional federal income tax consequences, but do so on different grounds. Whereas the Court of Appeals characterized the offset as actual damages, we instead characterize it as "any other appropriate remedy authorized by ... the United States Civil Rights Act." RCW 49.60.030(2). This characterization is supported by the liberal construction to be given WLAD and federal precedent holding that Title VII's expansive equitable remedies include offsets for additional federal income tax consequences. Finally, we award Ms. Blaney attorney fees on appeal as mandated by RCW 49.60.030(2) and RAP 18.1(a).
ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, and OWENS, JJ., concur.
SANDERS, J. (dissenting).
I agree with the majority insofar as it holds the trial court erred by instructing the jury "to calculate future earnings `from today until the time Ms. Blaney may reasonably be expected to retire.'" Majority at 761 (quoting Clerk's Papers at 240).[1] But this instruction was anything but harmless.
Under a label of de novo review the majority follows directly in the Court of Appeals' footsteps to hold the aforementioned instruction was harmless as a matter of law, basing its conclusion on the lack of any nonspeculative rebuttal evidence proffered by petitioner International Association of Machinist and Aerospace Workers, District No. 160 (District). Majority at 761-62.
In Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 898 P.2d 284 (1995), another Washington Law Against Discrimination case, this court found instructional error. Id. at 310-12, 898 P.2d 284. Applying the correct test for harmless error analysis, *765 we remanded the matter for a new trial and said:
"When the record discloses an error in an instruction given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless....
"A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case."
Id. at 311, 898 P.2d 284 (quoting State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977)).
That the majority characterizes the evidence as "speculative" suggests no rational jury could have disagreed with Blaney's proffered evidence that she would have worked until 65 as Blaney testified or 63 as Dr. Lowell Bassett testified. But of course since she had the burden of proof the jury had no duty to credit any of her evidence, even if uncontradicted. Nearhoff v. Rucker, 156 Wash. 621, 626, 287 P. 658 (1930). A jury's "verdict will not be set aside unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to support the verdict." Arnold v. Sanstol, 43 Wash.2d 94, 98, 260 P.2d 327 (1953). Had the jury been properly instructed, it very well could have reached the conclusion Blaney did not meet her burden to prove the duration of her employment by a preponderance of the evidence. It could have found instead she would not have worked until her 63rd or 65th birthday based on the District's evidence that Blaney might have been terminated before such time.
But the instruction above diverted the jury's attention away from any evidence which suggested Linda Blaney might have been terminated prior to her retirement. Based on that instruction the jury had no reason to examine or weigh the District's cross-examination of Dr. Bassett's testimony or the evidence which suggested Blaney's employment might not have run its full course. It was tantamount to a directed verdict on the issue of how long Blaney would work, which should beas the majority correctly notesan inherently factual question within the sole province of the jury. See majority at 760-61. Depriving the jury of its duty to resolve such a fact is by definition harmful.
Moreover, despite the majority's characterization, the evidence proffered by Blaney was speculative and had to be by its nature. Contra majority at 761. When asked how long she planned to work at Kenworth Trucking Company (her place of employment), she testified, "I plan on working till I'm 65 because I need the, uhm, health insurance. I have diabetes and, uh, not going to be able to buy health insurance, so I I would imagine that I'm going to be working until I'm 65." 3 Verbatim Report of Proceedings (VRP) at 398 (emphasis added). She further testified that there had been cyclical cutbacks at Kenworth, but that it was "not very likely" she would lose her job due to those cutbacks. Id.
This testimony suggests the possibility Blaney might have lost her job prior to her 65th birthday, or that her diabetes might have prevented her from continuing her employment as a trucker. While it may not have been likely Blaney would have been laid off, it was by no means certain.
Furthermore Dr. Bassett testified as an expert economist who opined Blaney would work an additional 12.81 years. 6 VRP at 965. He testified:
So, uhm, I next calculated a sort of average retirement age, and she was just, uhMs. Blaney was just age 50. So if you look statistically at how long people work, uh, 62.8 would be an average figure, taking account of the fact that there's always some probability that people will die. There's, uh, a probability that people will be injured. And people typically retire between ages 62 andand 67. So 62.8 is aa figure that would take account of all those statistics.
Id. (emphasis added). Expert witnesses are called to the stand for the express purpose of rendering opinions. See generally 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 702.1, at 30-31 *766 (4th ed.1999). Unlike the layperson, the expert witness may testify to matters to which he or she has no firsthand knowledge. Id. Although all expert opinions must be grounded in adequate foundation, Walker v. State, 121 Wash.2d 214, 218, 848 P.2d 721 (1993), such opinions are not binding on the jury. Moyer v. Clark, 75 Wash.2d 800, 806, 454 P.2d 374 (1969). Dr. Bassett's testimony was an educated guess at the amount of earnings Blaney would expect to receive. He assumed Blaney would work for an "average" number of years. 6 VRP at 965. By its very nature Dr. Bassett's testimony was, at least to a certain degree, speculative, but more fundamentally it was based on an erroneous instruction that the retirement date was necessarily determinative.
The jury might have reached the same conclusion had a proper instruction been given. But it is not the province of this court to assume it would have done so unless the instruction was "`trivial, or formal, or merely academic.'" Mackay, 127 Wash.2d at 311, 898 P.2d 284 (quoting State v. Wanrow, 88 Wash.2d at 237, 559 P.2d 548). I would reverse the Court of Appeals and remand for a new trial on damages. Because the majority holds otherwise, I dissent.
NOTES
[1] Ms. Blaney served as steward and chief steward of her union shop, as well as vice president and president of her local union. She was also a delegate to the Washington State Labor Council, the Washington State Machinists, and the King County Labor Council.
[2] D. Edson Clark, a certified public accountant, testified by declaration that Ms. Blaney will incur an additional $244,753 in federal income tax consequences than she would have incurred if she had properly been given the business representative position. CP at 2093-99. She will incur this greater liability because payment by lump sum places her in the highest tax bracket and triggers the "Alternative Minimum Tax (AMT), which disallows portions of her attorneys fees as a miscellaneous itemized deduction." CP at 2097.
[3] The District also asserts that Ms. Blaney may not argue that the jury instruction was proper because she "did not file a cross-petition for review or otherwise affirmatively seek review before this Court on that issue." Suppl. Br. of Pet'r at 1 n. 1. RAP 13.4(d) and 13.7(b) do not require Ms. Blaney to "file a cross-petition ... or... affirmatively seek review." The rules merely require that the issue be raised. The issue was raised in a lengthy footnote to Ms. Blaney's answer, as well as in repeated references to the erroneous nature of the jury instruction in the District's petition for review.
[4] Business representatives are appointed and removed by the directing business representative (hereinafter DBR) subject to the consent of the district council. Moreover, business representatives are expected to be loyal to the DBR's vision because the DBR is an elected official who serves a four-year term. To show that Ms. Blaney would not be loyal as a business representative, the then current DBR testified about a list of instances in which Ms. Blaney was disloyal during her tenure as senior shop steward. 8 VRP at 1361-77.
[5] The District provided testimony of an allegedly disloyal business representative who resigned after receiving a warning from his DBR. 5 VRP at 776-77.
[6] Ms. Blaney's final supplemental brief, however, argues for the "any other appropriate remedy" provision as posited by the Washington State Trial Lawyers Association Foundation (WSTLA Foundation) and Washington Employment Lawyers Association (WELA). Blaney's Suppl. Br. in Resp. to Brs. of Amici WSTLA Foundation, WELA, and WDTLA at 2-4.
[7] See Pet. for Review at 14 ("The Court of Appeals' determination that the WLAD allows recovery for tax consequences involves an issue of substantial public importance"; "[t]he Court of Appeals' determination that the Washington Law Against Discrimination (`WLAD') allows recovery for the tax consequences of a damages award was not only incorrect, it involves an issue of obvious and substantial public importance").
[8] See Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 255, 59 P.3d 655 (2002) (acknowledging that WLAD is to be broadly construed and construing the definitions of public accommodation and the exceptions to public accommodation to mean fraternal organizations are not necessarily distinctly private); Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 309-10, 898 P.2d 284 (1995) (acknowledging that WLAD is to be broadly construed and construing WLAD to require a plaintiff to prove discrimination was a substantial factor rather than a determining factor in discharge); Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994) (acknowledging that WLAD is to be liberally construed and construing WLADs use of inhabitant as a "general reference not intended to impose a residency requirement as a jurisdictional prerequisite to bringing suit"). But see Kilian v. Atkinson, 147 Wash.2d 16, 27, 50 P.3d 638 (2002) (acknowledging that WLAD is to be liberally construed, but refusing to extend WLAD to age discrimination).
[1] I do not take issue with the majority's resolution of the tax offset issue. See majority at 761-64.