Richard P. O'NEILL

v.

SEARS, ROEBUCK AND COMPANY.

No. Civ.A. 97CV3767.

United States District Court,
E.D. Pennsylvania.

July 31, 2000.

George P. Wood, Stewart Wood & Branca, Norristown, PA, Carmen R. Matos, Stewart, Wood and Branca, Norristown, PA, for Richard P. O'Neill.

Craig S. Hudson, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, Colleen Bannon, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Thomas C. De Lorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Sears.

## MEMORANDUM AND ORDER

HART, United States Magistrate Judge.

On January 25, 2000, after a five day trial, the jury returned a verdict for the plaintiff in this age discrimination suit. The jury awarded $106,736 in backpay, $130,596 in front pay, and $175,000 in compensatory damages provided for by the Pennsylvania Human Relations Act, ("PHRA"). In addition, the jury found the defendant's violation of the Age Discrimination in Employment Act, "ADEA," willful. Therefore, the court doubled the award for backpay, resulting in a total award of $519,068. The Plaintiff has filed a Motion to Mold the Verdict to include

prejudgment and post-judgment interest and damages resulting from the tax consequences of receiving the economic damages in a lump sum, rather than over the number of work years plaintiff would have worked, but for his premature termination.[1] For the reasons that follow, the plaintiff's Motion will be granted in part and denied in part.

## I. Prejudgment Interest

"The Third Circuit has stated that there is 'a strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities.'" *Shovlin v. Timemed Labeling Systems, Inc.*, No. 95–4808, 1997 WL 102523 *1 (E.D.Pa., Feb.28, 1997) (quoting *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 868 (3d Cir.1995)). The plaintiff seeks prejudgment interest on the backpay portion of the award, only. The defendant argues that an award of prejudgment interest would be inequitable because the plaintiff received an award of liquidated damages and an award of compensatory damages. (Defendant's Response, at 2). The Third Circuit's decision in *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089 (3d Cir.1995), directly addressed the relationship between liquidated damages and prejudgment interest and provides guidance in assessing the propriety of awarding prejudgment interest when an award of compensatory damages was made.

In *Starceski*, the Third Circuit, relying on the Supreme Court's decision in *Trans–World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), concluded that the purposes of liquidated damages and prejudgment interest did not overlap. Therefore, an award of prejudgment interest was appropriate in an ADEA case when liquidated damages had previously been awarded.

We think the Supreme Court's decision in *Thurston*, 469 U.S. at 125, 105 S.Ct. at 623–24, guides us in answering [the] question [whether pre-judgment interest

may be awarded along with liquidated damages]. There it stated that liquidated damages are punitive in nature and designed to deter willful conduct.... We have also recognized that the purpose of an award of prejudgment interest is to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered. We are unable to reconcile *Thurston*'s statement that liquidated damages are punitive with a denial of pre-judgment interest designed to compensate for loss of the time value of money.

*Starceski*, at 1101–02 (internal citations omitted).

Hence the court found that the purposes of the two awards were different and concluded that an award of prejudgment interest was appropriate when an award of liquidated damages had been made.

If awards of pre-judgment interest are compensatory, and liquidated damages are punitive, a concomitant grant of both is appropriate because pre-judgment interest serves the statutory goal of making [the Plaintiff] whole, i.e., it compensates him for the discriminatory wrong that he has suffered, while liquidated damages would punish [the Defendant] for its willful violation of the ADEA.

*Id.*, at 1101. *See also, Shovlin v. Timemed Labeling Systems, Inc.*, No. 95–4808, 1997 WL 102523 *2 (E.D.Pa. Feb.28, 1997) ("In *Starceski*, the Third Circuit made clear that in an ADEA case the district court may award prejudgment interest to back pay loss even though the claimant was awarded liquidated damages.").

■ Applying this analysis to a concomitant award of prejudgment interest and compensatory damages pursuant to the PHRA brings this court to the same result. As this court instructed the jury, "[c]ompensatory damages include damages for emotional pain, embarrassment, suffer-

1. Hereinafter, the court will refer to these tax damages as "negative tax consequences."

ing, humiliation, inconvenience, mental anguish and other what we call non-monetary or non-pecuniary losses." (N.T. 1/24/2000, 111). Since compensatory damages pursuant to the PHRA refer specifically to non-economic losses, and pre-judgment interest is an economic award to compensate the plaintiff for the loss of the time value of money, a concomitant award is not double compensation for the same loss. Furthermore, the award of both is consistent with the "statutory goal of making [the plaintiff] whole." *Starceski*, at 1101. Therefore, the court will award prejudgment interest.

The plaintiff and defendant do not agree on the interest rate, at which the prejudgment interest should be calculated. The plaintiff proposes that this court utilize the Internal Revenue Service's rate of interest for the time period in issue. The defendant argues that the court be guided by the post-judgment interest statute, 28 U.S.C. § 1961.

■ "The decision to award prejudgment interest and the amount of interest awarded are within the trial court's discretion." *Kraemer v. Franklin and Marshall College*, 941 F.Supp. 479, 487 (E.D.Pa.1996) (citing *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 629 F.Supp. 768, 770 (E.D.Pa.1985), *aff'd*, 789 F.2d 253 (3d Cir.1986)). Although both bases for calculation have support in our circuit, *see Kraemer; Taylor v. Central Pennsylvania Drug and Alcohol Servs. Corp.*, 890 F.Supp. 360, 368–70 (M.D.Pa.1995); *EEOC v. Reads, Inc.*, 759 F.Supp. 1150, 1162, n. 20 (E.D.Pa.1991) (awarding prejudgment interest on back pay in Title VII case using IRS rates and compounded quarterly), *but see, Shovlin*, at *2 (citing *Sun Ship, Inc. v. Matson Navigation, Co.*, 785 F.2d 59, 63 (3d Cir.1986)); *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 977–978 (E.D.Pa.1994) (awarding prejudgment interest on backpay utilizing the post-judgment interest statute), the court is convinced by the defendant's argument, utilizing the post-judgment interest statute, in light of the district court's reason-

ing in *Davis v. Rutgers Casualty Insurance Co.*, 964 F.Supp. 560, 576 (D.N.J. 1997).

First, this rate is easy to determine from the federal post-judgment interest rate charts following 28 U.S.C. § 1961. Second, the 52–week Treasury bill rate has been found by Congress and by the marketplace to be a suitable approximation of the available return for a typical risk-free investment; such a benchmark is a reasonable approximation of a risk-free investment available throughout the period in which the employer retained the employee's wages and benefits.

*Id.*

The post-judgment interest statute, 28 U.S.C. § 1961(a), provides for the calculation as follows:

Such interest shall be calculated from the date of the entry of the judgement, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of the fifty-two week United States Treasury bills settled immediately prior to the date of judgment.

28 U.S.C. § 1961(a). Having chosen the method of calculation, the court then faces the application of this method. The judges of our court have employed this statute differently in calculating prejudgment interest. The Honorable Raymond Broderick calculated simple interest on the back-pay award by taking the average T-bill rate for the prejudgment period and applied that rate to the award of back pay. *See Shovlin*, *2. The Honorable Herbert Hutton used the T-bill rate on the date of the judgment and compounded the interest yearly based on the amount of earnings that the plaintiff would have collected in that year, plus all the preceding years. *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 978 (E.D.Pa.1994).

■ Although Judge Broderick's method would be mathematically simpler, we find that Judge Hutton's method best serves the purpose of making the plaintiff whole.

Contrary to § 1961, however, the interest rate shall be applicable only to the amount the plaintiff would have earned each year before the verdict plus interest and salary the plaintiff would have earned in all of the preceding years (i.e. compounded), instead of interest on the whole award annually. This distinction from § 1901 is necessary because a plaintiff's backpay award grows incrementally each year, whereas a plaintiff becomes entitled to the amount subject to post-judgment interest on the day of the verdict.

*Id.*

We, however, will refine Judge Hutton's method by utilizing the T-bill rate available at the end of each year, rather than applying the rate available at the date of judgment. Employing this method results in a total backpay award of $120,768.11—including $14,032.11 in prejudgment interest, calculated as follows.

Dividing the total backpay award by 46, the number of months that elapsed between Mr. O'Neill's termination and the judgment, results in a monthly earnings amount of $2,320.35. Using the T-bill rates for the period ending just prior to each annum results in the following calculation:

| | |
|---|---|
| March 25, 1996 – March 25, 1997 | 27,844.20 *5.67% = $1,578.77 |
| March 25, 1997 – March 25 – 1998 | (27,844.20 + 27,844.20) *5.407% = $3,011.07 |
| March 25, 1998 – March 25, 1999 | (55,688.40 + 27,844.20) *4.918% = $4,108.13 |
| March 25, 1999 – January 24, 2000 | (83,532.60 + 23,203.50) *5.997% = $6,400.96* |

* To account for the fact that interest runs for only 10 months in the final calculation, this figure is reduced by ⅙ to $5,334.14
The total interest comes to $14,032.11.

## II. Negative Tax Consequences

### A. In General

The Plaintiff also requests the court to amend the judgment to include an award for negative tax consequences, relying on the "make-whole" objective of the ADEA. The defendant contends that the ADEA does not provide for such damages, disputes the taxability of compensatory damages, and argues that the defendant should not bear the increased tax liability to which the Plaintiff's awards for front pay, backpay, and the punitive damage awards are subject.

█ We conclude that the Plaintiff is entitled to an award for negative tax consequences, but limit the award to the increased tax liability on the award of front and backpay, only. Although the Third Circuit has not directly address this question, and, in fact, avoided the question in *Gelof v. Papineau*, 829 F.2d 452, 455 n. 2 (3d Cir.1987), and the judges of this district have denied such relief, *see Young; Shovlin*, at *2–3; *Becker v. ARCO Chemi-cal Co.*, 15 F.Supp.2d 621, 638 (E.D.Pa. 1998) (reversed on other grounds), we are again guided by the reasoning of *Starceski* and conclude that our case is distinguishable from those in which the claimant was denied such relief.

Prior to *Starceski*, the Third Circuit recognized the "make-whole purpose governing remedies for employment discrimination cases arising under the [ADEA]." *Squires v. Bonser*, 54 F.3d 168, 172 n. 7 (3d Cir.1995) (citing *Maxfield v. Sinclair Intern.*, 766 F.2d 788, 796 (3d Cir.1985) cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986)). In *Starceski*, the Third Circuit relied on this "make-whole" purpose in concluding that the plaintiff was entitled to a concomitant award of liquidated damages and prejudgment interest.

Prejudgment interest, the Third Circuit held, "reimburse[s] the claimant for the loss of the use of its investment or its funds from the time of the loss until judg-

ment is entered." *Starceski*, at 1102 (quoting *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253, 259 (3d Cir.1986)). Since the Third Circuit recognized the economic necessity of compensating for the lost "time value of money" in order to comply with the "make-whole" doctrine, we anticipate that the Third Circuit would likewise compensate the claimant for the depletion of that money due to the increased taxes to which the award is subject on account of its being received in a single tax year, rather than being spread out over time.

The argument is particularly compelling in the case of front pay, since the plaintiff has already had his front pay recovery reduced to present value, on the assumption that he can now invest the money and receive a yearly return equal to his lost wages. However, if the plaintiff must pay a higher tax on the present value of his earnings, this leaves less for investment. Hence, the plaintiff will not, in fact, realize an investment gain large enough to equal the future wages that he is not getting as a result of the defendant's discriminatory conduct. As the television advertisement of a few years ago said: "It's not how much you make, it is how much you *keep*." The goal of the ADEA is to allow plaintiff to *keep* the same amount of money as if he had not been unlawfully terminated. Compliance with this goal requires reimbursement for the reduced amount of front pay money that the plaintiff has to invest as a result of higher taxes, as well as reimbursement for the higher taxes he must pay on his back wages caused by getting this money in a lump sum.

We also note that such a decision does not contradict other cases in this district, as our case is distinguishable from those previously decided. Although the Honorable Herbert Hutton denied a request for an award of negative tax consequences in

*Young*, his decision pre-dated the taxability of the award. *Id.*, at 978. The Honorable Raymond Broderick denied a similar request in *Shovlin*, a case decided after the Internal Revenue Code had been amended to include such awards as ordinary income. However, Judge Broderick based his denial on the fact that the plaintiff had failed to present any testimony by a tax expert calculating the negative tax consequences. "[T]his court is not inclined to engage in the speculative task of determining the Plaintiff's future tax liability." *Shovlin*, at *3. Relying on *Shovlin*, the Honorable Eduardo Robreno also denied any award for negative tax consequences.[2] *Becker*, at 638. In our case, plaintiff's counsel has remedied the defect cited by Judge Broderick by presenting the opinion and calculations of Andrew Verzilli, the economic expert whose testimony the plaintiff presented at trial. (N.T. 1/20/2000, 178–182; Exhibit B attached to Plaintiff's Motion to Mold the Verdict).

### B. Applicability to the Components of the Award

Having concluded that negative tax consequences are an appropriate remedy pursuant to the "make whole" provisions of the ADEA, we will proceed to discuss the applicability of the remedy to each component of damages award by the jury.[3] The plaintiff argues that the defendant should bear the increased tax burden to which the entire award ($519,068) is subject. The defendant, although arguing that an award for negative tax consequences in not appropriate, argues alternatively that the compensatory and liquidated damages awarded by the jury not be considered in calculating such an award.

The court agrees with the defendant in this regard. The plaintiff focuses on the taxability of the other components of the award, the compensatory and liquidated

---

**2.** Unfortunately, the Third Circuit did not address this issue in the appeal of *Becker*, as it reversed the decision on other grounds.

**3.** At trial, both sides agreed that the applicability and calculation of any negative tax consequences would be left to the court. (N.T. 1/21/2000, vol.2, 150–153).

damages. Although the court agrees that those components of the award will also be subject to taxation, the plaintiff's counsel loses sight of the "make whole" rationale behind the ADEA, upon which she relied in arguing for an award for negative tax consequences, in the first place. Mr. O'Neill would have earned the backpay and front pay had the defendant not unlawfully terminated him. Therefore, he is entitled to receive the value of front pay and backpay that he would have received over his work life. That value is diminished when the lump sum is taxed at a higher level. Therefore, in order for Mr. O'Neill to be made whole, he is entitled to an award of the negative tax consequences on the backpay and front pay portions of the jury's award.

The compensatory and liquidated damages, however, are *only* a product of this lawsuit. Mr. O'Neill would not have received these sums but for the defendant's discriminatory action. Hence, allowing the plaintiff to recover the increased tax he will have to pay on these sums does more than make him whole. It gives the plaintiff a windfall.

### C. The Calculation

Unfortunately, in the report attached to the Plaintiff's Motion to Mold the Verdict, the calculations done by Mr. Verzilli assume that the court would consider the entire award when calculating the negative tax consequences. As previously discussed, the court will consider only the front and backpay portions of the award in doing such a calculation. Therefore, the court will not consider the tax imposed on the compensatory and liquidated damages and will not consider the effect that the additional $281,736 in compensatory and liquidated damages will have on the plaintiff's tax bracket.

According to Mr. Verzilli (and the defendant has presented no evidence contrary to Mr. Verzilli's calculations), the O'Neills' gross earnings this year would have been approximately $55,853, had Mr. O'Neill

continued working at Sears. (Exhibit B attached to Plaintiff's Motion to Mold the Verdict). Using the O'Neills' deductions of approximately $12,000 yields a tax rate of 11.96%.

At that tax rate, Mr. O'Neill would owe $28,384.91 in taxes on the $237,332 he has received in front and backpay. However, because he is receiving this money all at once, together with his present salary of $24,960 and Mrs. O'Neill's salary of $11,428, his gross income this year, exclusive of compensatory and liquidated damages, will be $273,730. Using the same deductions, the tax rate jumps to 28.3%. Applying this rate to plaintiff's front and backpay recovery of $237,332 shows a tax bite of $67,164.96. This amount is $38,780.05 *more* in taxes than plaintiff would owe on this money had he received it over time as annual wages. The court will, therefore, mold the verdict to include an award of $38,780.05 for these negative tax consequences.

### III. Post–Judgment Interest

The defendant concedes that the plaintiff is entitled to an award of post-judgment interest on the entire award, calculated pursuant to 28 U.S.C. § 1961. Therefore, post-judgment interest will be awarded at 5.997%, the T-bill rate available on January 4, 2000, the last auction prior to the date of the judgment. <*http://156.119.80.10/finance/postiud/table.html*>.

An appropriate order follows.

### ORDER

AND NOW, this 31 day of July, 2000, upon consideration of the Plaintiff's Motion to Mold the Verdict, the Defendant's Response, thereto, and the Plaintiff's Reply, IT IS HEREBY ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART.

1. The Plaintiff's Motion to Mold the Verdict to add prejudgment interest is GRANTED. However, the court's method

of calculation differs from that proposed by the Plaintiff. Prejudgment interest through January 24, 2000 is awarded in the amount of $14,032.11, resulting in a backpay award of $120,768.11.

2. The Plaintiff's Motion to Mold the Verdict to add an amount for negative tax consequences is granted to the extent the tax consequences are calculated with the addition of the awards for backpay and front pay only. No consideration is given to the awards for compensatory or liquidated damages. Therefore, the verdict is increased by $38,780.05.

3. Judgment is amended and entered in the amount of $571,880.16 in favor of the Plaintiff. Richard P. O'Neill, and against the Defendant, Sears, Roebuck & Company.

4. Plaintiff's Motion to Mold the Verdict to add post-judgment interest is GRANTED and such interest shall be calculated at the rate of 5.997%.

5. Plaintiff shall file it's motion for attorney fees and costs within fourteen (14) days of this the date of this Order.