103 P.3d 827 (2004)
Chuong Van PHAM, an individual, and Heliodoro Lara, an individual, Appellants,
v.
The CITY OF SEATTLE, Seattle City Light, Respondent.
No. 52356-2-I.
Court of Appeals of Washington, Division 1.
December 20, 2004.
*830 John Patrick Sheridan, Randy Perry Baker, Seattle, for Appellants.
Frederick E. Wollett, Seattle City Attorneys Office, Seattle, for Respondent.
BECKER, J.
This appeal concerns the attorney fees awarded against Seattle City Light in an employment discrimination lawsuit, and an award of supplemental damages for the increased tax liability. We hold that the weakness of a plaintiff's case is not an appropriate basis for denying a request for an attorney fees multiplier otherwise justified by the risk involved. We also hold the supplemental damages a successful plaintiff may obtain to cover the adverse tax consequences of a lump sum award may include the consequences attributable to an award for emotional distress.
Chuong Van Pham and Heliodoro Lara sued Seattle City Light in 1997. Five years of litigation, including a detour to federal court and two appeals, whittled their lawsuit down to a claim of disparate treatment on the basis of race and national origin. Plaintiffs tried this claim to a jury for three weeks and obtained a verdict for over $550,000.[1] The award was for front and back pay, and for non-economic damages of $120,000.

ATTORNEY FEE MULTIPLIER
The verdict entitled plaintiffs to an award of reasonable attorneys' fees under the Washington Law Against Discrimination, RCW 49.60.030(2).
Trial courts must independently determine what are reasonable attorneys' fees, beginning first by calculating a lodestar figure. The lodestar method is grounded in the market value of the lawyer's services, and is determined by multiplying the hours reasonably expended in the litigation by each attorney's reasonable hourly rate of compensation. Steele v. Lundgren, 96 Wash.App. 773, 780, 982 P.2d 619 (1999).
Plaintiffs calculated a lodestar of $347,588.27.[2] The trial court found the hourly rates and the overall time claimed to be generally reasonable.[3] The court made specific modifications resulting in a deduction of some $50,000, to reach a final lodestar amount of $297,532.77 for fees.[4]
In cases where the attorney's compensation is contingent on success, the court may consider the necessity of adjusting the lodestar figure to account for the risk factor. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 598-99, 675 P.2d 193 (1983). This calls for an assessment of what the likelihood of success was at the outset of litigation. Bowers, 100 Wash.2d at 598-99, 675 P.2d 193. The contingency adjustment is designed solely to compensate for the possibility *831 that the litigation would be unsuccessful and that no fee would be obtained. It should not be granted in a case where the hourly rate underlying the lodestar figure already comprehends an allowance for the contingent nature of counsel's work. The burden of justifying any deviation from the lodestar rests on the party proposing the deviation. Bowers, 100 Wash.2d at 598, 675 P.2d 193.
In this case, plaintiffs requested a contingency adjustment. Attorney John Sheridan declared that the difficulties of proof were apparent to him as soon as he met plaintiffs Pham and Lara. "Their case was a difficult one in that each ... knew that he had been discriminated against but was unable to provide details of the discrimination  only a strong belief that each was treated unfairly owing to his race or national origin."[5] Sheridan explained how he overcame this problem by pursuing a high-risk litigation strategy of proving the case through cross-examination and the testimony of adverse witnesses.[6] "I chose to call nine adverse witnesses before calling my first friendly witness, because my clients were unable to explain their claims and because the evidence of discrimination was in the actions or inaction of management."[7]
The court, tracking the factors mentioned in Bowers, found that counsel worked on a contingent fee agreement and that the lodestar hourly rate was consistent with ordinary market rates. The court agreed that the litigation was a "high risk case."[8] The court nevertheless denied the request for a multiplier. The court concluded that the lodestar amount was "just compensation" without a multiplier because the risk, by counsel's own admission, derived from the difficulty of proof.[9] The court found that much of the risk "was a consequence of the plaintiffs' own difficulty in articulating the nature of the claims of discrimination against them," as well as "the paucity of compelling relevant evidence of discrimination".[10] Pham and Lara assign error to the court's decision not to grant a contingency adjustment.
A trial court's award of fees will not be reversed absent an abuse of discretion. Steele, 96 Wash.App. at 780, 982 P.2d 619. City Light defends the ruling by arguing that the issues in the case were neither legally novel nor technically difficult. But the adjustment was requested on the basis of risk, not on the basis of quality of representation, so City Light's arguments are not particularly relevant. Washington case law supports granting a contingency adjustment to the lodestar as long as the circumstances meet the tests set forth in Bowers. The legislative goal in enacting the fee shifting statute was to enable vigorous enforcement of modern civil rights litigation, and to make it financially feasible for individuals to litigate civil rights violations. Hume v. American Disposal Co., 124 Wash.2d 656, 675, 880 P.2d 988 (1994). An attorney who takes such a case on a contingent fee basis assumes a substantial risk that a fee will never materialize. "The experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk." Bowers, 100 Wash.2d at 598, 675 P.2d 193 (quoting Samuel Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U. Pa. L.Rev. 281, 324-25 (1977)).
The law against discrimination is not intended to protect only the articulate. The plaintiffs' inability to "articulate" their claims is an indicator of the risk the attorney assumed in taking their case. And the "paucity" of evidence known to the plaintiffs at the outset of the case is a common feature of disparate treatment litigation. Direct proof of intentional discrimination is typically difficult to come by. Riordan v. Kempiners, 831 F.2d 690, 697-98 (7th Cir.1987).
*832 In determining attorney fees, a trial court abuses its discretion when it takes irrelevant factors into account. See Perry v. Costco Wholesale, Inc., 123 Wash.App. 783, 98 P.3d 1264 (2004)(court abused discretion by declining to consider a multiplier solely because the resulting award of attorney fees would be "disproportionate" to the damage award); Martinez v. City of Tacoma, 81 Wash.App. 228, 241, 914 P.2d 86 (1996) (court abused discretion by placing undue emphasis on contingent fee agreement when determining reasonable attorney fees under RCW 49.60.030(2)); Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987) (court abused discretion by reducing fee award on the basis of the novelty of the claim). We conclude the court here abused its discretion by denying an otherwise justified multiplier solely on the basis of an irrelevant factor  the inability of the plaintiffs to supply their attorney with compelling evidence at the outset of the case. The award is reversed and remanded for a contingency adjustment.
Plaintiffs requested a multiplier of 2.0. They seek a ruling from this court endorsing that number. That decision, however, is not one that should originate in an appellate court. Fee decisions are entrusted to the discretion of the trial court. Steele, 96 Wash.App. at 780, 982 P.2d 619. A reviewing court may remand an award of attorney fees for reconsideration when the trial court has applied erroneous standards. Blair v. Washington State University, 108 Wash.2d 558, 570, 740 P.2d 1379 (1987). We do so here. See Perry, 123 Wash.App. at ___, 98 P.3d at 1277.

REDUCTION OF HOURS
The trial court disallowed certain hours, with the effect of reducing the lodestar by some $50,000. The plaintiffs challenge these deductions.
The statute provides that a successful plaintiff may recover, among other things, "reasonable" attorneys' fees:
Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).
RCW 49.60.030(2).
The court must limit the lodestar amount to hours reasonably expended and therefore must eliminate hours "spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers, 100 Wash.2d at 597, 675 P.2d 193.
The specific tasks for which the court denied compensation were among numerous items criticized by City Light as unnecessary and unproductive. The deductions included 47 hours for preparing an unsuccessful cross motion for summary judgment in federal court; 5 hours for time spent on an amended complaint that was never filed; and 3.3 hours for preparing a motion on the merits in this court. The court reasoned that this time "was not reasonably related to, nor did it cumulatively result in plaintiffs' favorable resolution".[11] The court also made various deductions for time expended post-verdict that the court found was "not devoted to issues of relevance that were tried in this litigation."[12] These deductions included 4.3 hours spent on settlement issues; 40 hours devoted to the unsuccessful request for injunctive relief; 15 hours for research related to tax consequences of the verdict; and 35 hours documenting the unsuccessful request for a lodestar multiplier.
On appeal, City Light defends the exclusion of the hours as within the judge's discretion, and consistent with both state and federal law allowing a reduction for hours that were not reasonably expended. However, neither the findings of the court nor the *833 record below indicate that the work of plaintiffs' attorneys was characterized to any substantial degree by duplication, wastefulness, churning, or other sins of mismanagement. Instead, it appears that the trial court improperly focused on the short term failure of certain components of the litigation, when the focus should have been on the long term success of the litigation as a whole. For example, the court disallowed the time spent in requesting injunctive relief on the basis that it was a "readily segregable" claim on which "plaintiffs are not prevailing parties",[13] when in fact the request for an injunction was based on the same course of conduct by City Light and the same legal theories that supported the verdict for damages. Where the plaintiffs' claims involve a common core of facts and related legal theories, a plaintiff who has won "substantial relief" should not have the fee reduced simply because the trial court did not adopt each contention raised. Martinez, 81 Wash.App. at 243, 914 P.2d 86. The court should have allowed compensation for the hours discussed in this section because they were related to the discrimination claims on which the plaintiffs ultimately achieved substantial relief. On remand, they should be included in the compensable hours.[14]

USE OF HISTORIC FEE RATE
The lodestar is the product of the hours reasonably expended in the litigation multiplied by the reasonable hourly rate. Using an attorney's historic billing rate will produce inadequate compensation when, as here, the attorney receives no compensation until the litigation is over. Adjusting historic rates to compensate for the delay in payment and for inflation is appropriate in civil rights and other public interest litigation. Using the attorney's current billing rate as of the time of the award of fees is one way to accomplish the adjustment. Steele, 96 Wash.App. at 785-86, 982 P.2d 619. That is what the trial court did in this case, using attorney John Sheridan's current billing rate of $250 for most of the hours. But for work on the case during the first two years, the court used the hourly billing rate of $175, Sheridan's rate at the time the services were performed. The court observed that the case had a "long history in which some of plaintiffs' originally filed claims had been withdrawn, dismissed or not pursued at trial."[15] The court was referring to the original claims of harassment and retaliation that were distinct from the claim of disparate treatment on which the plaintiffs finally went to trial. The problem perplexing the court was that "some of the time on these claims was not related to the claims ultimately pursued by plaintiffs", even though they related to a common core of facts  management's refusal to intervene to stop workplace discrimination.[16] The court's solution was to use counsel's historical rate, without further adjustment for inflation or delay, as "an equalizing factor to time spent on abandoned, dismissed or withdrawn claims."[17]
Plaintiffs assign error to this ruling. According to the case on which they principally rely, "an award based upon historic rates which does not take delayed payment into account will not be a fully compensatory fee." Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir.1986). But the court was not shirking its obligation to adjust for inflation and foregone interest. The court was trying to do rough justice with respect to the first two sputtering years of the litigation. Using the historic rate was an alternative to the daunting prospect of figuring out exactly how many hours expended during that time period should be allocated to the disparate treatment claim and how many to the unsuccessful claims of retaliation and harassment. While the court's yardstick may have been somewhat imprecise, the plaintiffs have not recommended a better one. Their solution  to *834 compensate for all these hours at current rates  does not address the court's reasonable objective of denying some but not all compensation for unsuccessful claims that partially related to the successful claims. We find no abuse of discretion.

SUPPLEMENTAL DAMAGES FOR ADVERSE TAX CONSEQUENCES
Pham and Lara filed a motion for supplemental damages covering the tax consequences of their judgment and the award of attorney fees. This was eight months after the judgment on the verdict and two months after the award of attorney fees. City Light argued that the motion was untimely under CR 59's 10-day time limit for a motion to amend the judgment, and that it failed to meet any of the requirements set forth in CR 60 for obtaining relief from a judgment. The trial court rejected this argument and made an award. City Light challenges this ruling in a cross-appeal.
The federal civil rights act has been interpreted as providing an award for tax consequences as an equitable remedy. Blaney v. International Ass'n of Machinists and Aerospace Workers, 151 Wash.2d 203, 215-216, 87 P.3d 757 (2004). The Washington Law Against Discrimination incorporates remedies authorized by federal law, and therefore an offset for additional federal income tax consequences of a discrimination award falls into the category of "any other appropriate remedy", the "catchall remedy provision" of RCW 49.60.030(2). Blaney, 151 Wash.2d at 214, 87 P.3d 757.[18]
A motion to obtain this equitable remedy is not like a motion to amend a judgment or obtain relief from a judgment. It is analogous to a request for attorney fees. See Hirata v. Evergreen State Ltd. Partnership 5, No. 52841-0, ___ Wash.App. ___, 103 P.3d 812, 2004 WL 2849620 (Wash.Ct.App. December 13, 2004). A motion for attorney fees is collateral to the cause of action to be proved at trial; it is not a matter properly encompassed in a decision on the merits. White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); Wlasiuk v. Whirlpool Corp., 76 Wash.App. 250, 257, 884 P.2d 13 (1994). The same is true of an award of supplemental damages to cover tax consequences. The inquiry into how much should be awarded cannot even begin until the plaintiff achieves entry of judgment in a particular amount. As with a petition for attorneys' fees, the request "`does not imply a change in the judgment, but merely seeks what is due because of the judgment.'" White, 455 U.S. at 452, 102 S.Ct. 1162 (quoting Knighton v. Watkins, 616 F.2d 795, 797 (1980)). The trial court properly concluded that CR 59 and CR 60 were inapplicable to the plaintiffs' motion for supplemental damages.
Plaintiffs asked for supplemental damages to compensate for the increased tax liability attributable to their receipt of a lump sum award. The court awarded damages in the amount of $168,000, the figure calculated by City Light's expert witness. Unlike the figure calculated by plaintiffs' expert witness, the amount awarded does not cover the increased tax liability attributable to the non-economic damage portion of the judgment (emotional distress damages) or the award of interest.
Plaintiffs appeal from this order. They contend that under Blaney they are entitled to be compensated for the adverse tax consequences of the entire award, not just the tax consequences flowing from recovery of lost wages.
In Blaney, the plaintiff requested supplemental damages only with respect to the tax liability on her lost wages. Blaney, 151 Wash.2d at 209, 87 P.3d 757. Blaney's reasoning does not provide a basis to confine the award to the tax consequences on lost wages. Blaney simply concluded that Washington's statute, because it incorporates federal remedies," *835 allows offsets for additional federal income tax consequences". Blaney, 151 Wash.2d at 216, 87 P.3d 757.
City Light argues that it was within the court's discretion to let the plaintiffs shoulder the tax consequences of the emotional distress damages and interest. City Light contends that these awards are unlike lost wages in that the money "would have been received as a lump sum in any event"[19] and necessarily would have been subject to taxation at a higher rate. This argument is similar to the rationale of the only case called to our attention that specifically addresses non-economic damages, O'Neill v. Sears, Roebuck, and Co., 108 F.Supp.2d 443 (E.D.Pa.2000).
In O'Neill, the district court's award for negative tax consequences covered only the back and front pay portions of the judgment. The court reasoned that the goal of the statute is "to allow plaintiff to keep the same amount of money as if he had not been unlawfully terminated." O'Neill, 108 F.Supp.2d at 447 (emphasis in original). The court recognized that the plaintiff would be subject to taxation on the components of the award consisting of non-economic damages, but did not think compensating the plaintiff for the tax consequences of those damages would serve the statute's "make-whole" rationale. The court explained as follows:
Mr. O'Neill would have earned the backpay and front pay had the defendant not unlawfully terminated him. Therefore, he is entitled to receive the value of front pay and backpay that he would have received over his work life. That value is diminished when the lump sum is taxed at a higher level. Therefore, in order for Mr. O'Neill to be made whole, he is entitled to an award of the negative tax consequences on the backpay and front pay portions of the jury's award.
The compensatory and liquidated damages, however, are only a product of this lawsuit. Mr. O'Neill would not have received these sums but for the defendant's discriminatory action. Hence, allowing the plaintiff to recover the increased tax he will have to pay on these sums does more than make him whole. It gives the plaintiff a windfall.
O'Neill, 108 F.Supp.2d at 448 (emphasis in original).
This rationale does no more than draw an obvious distinction between an award for non-economic damages and an award for lost wages. If plaintiffs had not been unfairly denied promotions, they would have received wages, but they would not have received damages for emotional distress. Neither City Light nor O'Neill persuasively explains why this is a material distinction. The fact is that the plaintiffs were unfairly denied promotions. They have received not only their lost wages but also an award of non-economic damages, and they will have to pay taxes that will diminish the value of each award. Emotional distress damages, just as much as front and back pay, are awarded to make the victim whole. Such an award is not a gain for the plaintiff; it substitutes for the sense of well-being that the plaintiff lost as a result of being discriminated against. A plaintiff who is reimbursed for the tax consequences of an award for emotional distress does not receive a windfall.
The insubstantial distinction City Light attempts to draw between lost wages and emotional distress in the context of a discrimination action must give way to the strong "make-whole" policy of the relevant statutes. Washington's law against discrimination mandates liberal construction, Martini v. Boeing Co., 137 Wash.2d 357, 364, 971 P.2d 45 (1999). It embodies a public policy of the highest priority. Xieng v. Peoples Natl. Bank, 120 Wash.2d 512, 521, 844 P.2d 389 (1993). Its general purpose is to "eliminate and prevent discrimination". Kilian v. Atkinson, 147 Wash.2d 16, 23, 50 P.3d 638, 640 (2002). We have been presented with no convincing reason why the equitable remedy whose availability was confirmed in Blaney should be limited so as to exclude the non-economic damages. In light of the "any other appropriate relief" provision in RCW 49.60.030(2), we conclude the trial court erred in imposing that limitation. The award is reversed and remanded.
*836 As to the question of interest being included in the calculation of tax consequences, we express no opinion. The parties' briefing does not specifically address that question and the record is unclear as to whether the dispute involves prejudgment interest, post-judgment interest, or both. On remand, the tax consequences for the non-economic damages should be included in damages, and the plaintiffs may seek reconsideration of the decision to exclude interest.
The plaintiffs requested $5,750 for the cost of bringing the motion for supplemental damages. The court reduced this amount to $2,750, identifying two reasons: "(1) motion could have been brought earlier within 10 days of judgment, avoiding necessity of CR 59 and 60 briefing and (2) denial of motion to strike".[20] These are not tenable reasons for denying an otherwise justified award of attorney fees. Since Cr 59 and CR 60 do not apply to the motion for supplemental damages, there was no necessity for City Light's briefing on CR 59 and CR 60. And City Light has not explained why plaintiffs' unsuccessful presentation of a motion to strike opposing counsel's supplemental declaration would justify substantially reducing the fees awarded for the main motion. On remand the plaintiffs should be awarded their attorneys' fees for this motion without any reduction.

ATTORNEY FEES ON APPEAL
Pham and Lara have prevailed on appeal. They are entitled to attorney fees and costs on appeal. Martinez v. City of Tacoma, 81 Wash.App. 228, 914 P.2d 86 (1996). On remand the trial court should calculate the reasonable attorney fees for the appeal. Further calculations will then be necessary to adjust the supplemental damage award to cover the increased tax liability resulting from increases in the award of attorneys' fees, including fees on appeal.
The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
WE CONCUR: APPELWICK and COLEMAN, JJ.
NOTES
[1] This court upheld the verdict on appeal in March 2004, and affirmed the court's decision to deny plaintiffs' request for an injunction, in Pham v. City of Seattle, No. 50649-8-1, 120 Wash.App. 1038, 2004 WL 418016, (Wash.App.Ct. March 8, 2004).
[2] Findings of Fact and Conclusions of Law Re Plaintiffs' Petition for Attorney Fees and Costs, Finding 9, Clerk's Papers at 638-39.
[3] Findings of fact 17 and 23, Clerk's Papers at 644, 648.
[4] Finding of fact 31, Clerk's Papers at 652.
[5] Attorney Declaration in Support of Attorney Fee Petition, Clerk's Papers at 166-67.
[6] Attorney Declaration, Clerk's Papers at 170, et seq.
[7] Attorney Declaration, Clerk's Papers at 175.
[8] Finding of fact 34, Clerk's Papers at 653.
[9] Finding of fact 34, Clerk's Papers at 653.
[10] Finding of fact 34, Clerk's Papers at 653-54.
[11] Finding of fact 29, Clerk's Papers at 651.
[12] Finding of fact 30, Clerk's Papers at 651.
[13] Finding of fact 28, Clerk's Papers at 650.
[14] They will not necessarily be included in the amount to which a multiplier is applied, as the risk factor "should be applied only to time expended before recovery is assured". Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 599, 675 P.2d 193 (1983).
[15] Findings of fact 10, Clerk's Papers at 640.
[16] Finding of fact 27, Clerk's Papers at 650.
[17] Finding of fact 10, Clerk's Papers at 640.
[18] This court's earlier opinion in Blaney had characterized the damage award for increased tax liability as "actual damages" under RCW 49.60.030(2). See Blaney v. International Ass'n of Machinists and Aerospace Workers, 114 Wash.App. 80, 83, 55 P.3d 1208 (2002). The Supreme Court concluded the award is not "actual damages" because "the additional tax liability is too attenuated from the unlawful discrimination". Blaney v. International Ass'n of Machinists and Aerospace Workers, 151 Wash.2d 203, 216, 87 P.3d 757 (2004).
[19] Respondent's Brief at 24.
[20] Order granting plaintiffs' motion for supplemental damages and attorney fees, Clerk's Papers at 734.